Watts & S.
4ws351
133  366

## Poe *against* Foster.

If a judgment be assigned as a security to indemnify the assignee for a liability he is under for the assignor, and the assignee assign it to another who has a knowledge of the facts, the holder of it having collected the money is a trustee, and upon the first assignee being relieved from his liability, the plaintiff is entitled to recover the money from the last assignee.   And the right of action accrues when the liability of the first assignee ceases; and from that period the Statute of Limitations begins to run.

ERROR to the District Court of *Erie* county.

This was an action on the case by William B. Foster against George Poe, Jr.   The facts of the case were so voluminous, and involved so little principle, as not to justify any other statement of them than that contained in the opinion of the court.

*Sill* and *Pearson*, for plaintiff in error.
*Riddle* and *Dunlop*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—In the year 1818, William B. Foster became agent of the Philadelphia and Pittsburgh Transporting Company, and H. Baldwin, Wm. Wilkins and Wm. Robison, were his sureties in a bond of $5000 to that company; and to secure them he assigned a claim against David M'Nair, on which they obtained a judgment for $1900.   Of November term 1821, the Bank of Pennsylvania obtained a judgment against Henry Baldwin of $1966, and issued a *fieri facias* to January 1822, which is marked "Stayed by plaintiff's attorney, $1000 paid 26th of March 1823." So is the copy before me under seal.   Whether this last date ought to have been 26th of March 1822, or whether the entry ought to have been on the next writ to January 1824, I know not.   On the copy of the writ to January 1822, there is endorsed an order to levy on a flock of 800 merino sheep and library; but there is no levy endorsed on the writ, nor any note of one on the execution docket.   The levy is endorsed on a subsequent writ in 1824.

A levy being ordered on the writ to January 1822, a proposition was made to assign the judgment against M'Nair to Mr Poe, who was pressing the judgment of the Bank of Pennsylvania.   There was some hesitation with Robison, and Wilkins at first refused.   Foster was consulted, and he agreed to the terms in the annexed agreement, and wrote the agreement.   Robison

[Poe v. Foster.]

had agreed on receiving $800; and Wilkins at or about the time of the agreement, received $400. This was to secure them in the event of a recovery by the Transporting Company, who then had or soon after brought suit on the bond. The following is a copy of the agreement :—

" In the year 1818, Wm. B. Foster assigned to Wm. Wilkins, Wm. Robison, Jr. and Henry Baldwin, a claim on David M'Nair, who confessed judgment in their favour for $1900, bearing interest. This amount, among other things, was assigned for the purpose of indemnifying them against a bond to the Philadelphia and Pittsburgh Transporting Company, to the amount of $5000, as sureties for Wm. B. Foster. This judgment is now transferred to George Poe to pay a debt due by Henry Baldwin, who has paid Wm. Robison $800, being one-third part or thereabout. With Wm. Wilkins no definite agreement has been made. It is agreed by Henry Baldwin that a judgment of the Bank of Pennsylvania against him in Allegheny county shall remain as a security against him for the same purposes as the judgment of David M'Nair, or be assigned to some person for the same trust, when the amount of M'Nair's judgment shall be recovered by Poe. If the Transporting Company recover the amount of the bond against the sureties, the amount of the M'Nair judgment is to be applied to it. If they do not recover, the parties who make use of it or any part of it, are to account with Wm. B. Foster in the settlement of their respective accounts."

This was signed by Baldwin, Robison and Wilkins, and dated 22d of January 1823. Under this on the same paper, was as follows :—

" On the payment to me of this judgment due by David M'Nair, I agree to retain the judgment of the Bank of Pennsylvania as a security for the same purposes as the judgment of David M'Nair was held before its assignment to me, or to assign it to such person as may be named by the parties. Pittsburgh, Feb. 4th 1823.

" GEORGE POE, Jr."

The question is, do the rights of the plaintiff and defendant depend on this paper or on the parol evidence given in the cause, which, if relied on, might essentially change the rights of the parties. The opinion of the District Court was, that on this writing, and facts relating to the transaction, the plaintiff could recover. I say this paper, for the different parts, though signed at different times, all relate to the same matter. Unless Mr. Poe agreed to accept it on the terms stated in it, the agreement of Robison and Baldwin and Wilkins and Foster went for nothing. I say, and Foster, for Robison and Wilkins both state, as well as Baldwin, that their agreement to assign was not concluded until he agreed, and in fact wrote all but the part signed by Poe, as Robison and

Wilkins both state expressly that they were induced to enter into the agreement to relieve Baldwin from the pressure of the judgment of the Bank of Pennsylvania. That a loan by Poe to Baldwin of the books was never mentioned; they had then never heard of it; and such was expressly the recollection of Baldwin as relates to the object of this assignment. The paper drawn by Foster and signed 22d of January 1828, was not a hasty transaction. All agree the parties who signed and Foster had been deliberating some time, and that at length on the agreement of Foster, it was executed as he wrote it. The assignment of the claim on M'Nair by Foster to Baldwin, Robison and Wilkins, is not before us, nor the assignment by them to Poe; but the above agreement states explicitly that it was made by Foster in trust as a security. Poe saw and read this before he wrote and signed on the same paper his agreement accepting it, on 4th of February 1823. (I will state that Poe now claims to hold the proceeds of the M'Nair judgment in payment of the money or rather books he lent to Baldwin to raise money.) It is also agreed and appears that the amount due on the judgment against M'Nair was in 1823 about $2400; that before the assignment of 22d of January 1822, Baldwin paid to Robison as stated in the assignment $800, which made him safe, and the final agreement was that he should pay and did pay Wilkins $400, and they have both accounted for that money with interest to Foster. These arrangements made, Baldwin was the owner of the whole judgment; $1200 (the money he paid Robison and Wilkins) in his own right, and $1200 in trust for Foster, when the sureties were clear of responsibility to the Transporting Company, and there was a judgment in their favour in 1834. This contest is for the last $1200 and interest.

After the preliminary matter, the above agreement states: " It is agreed by Henry Baldwin that a judgment of the Bank of Pennsylvania against him in Allegheny county shall remain as a security against him for the same purposes as the judgment of David M'Nair, or be assigned to some person for the same trust, when the amount of the M'Nair judgment shall be recovered by Mr. Poe." Under this Poe writes: " On the payment to me of the judgment due by David M'Nair, I agree to retain the judgment of the Bank of Pennsylvania as a security for the same purposes as the judgment of David M'Nair was held before its assignment to me, or assign it to such person as may be named by the parties." Now the judgment on David M'Nair was held in trust, one half for Baldwin, and with that we have no concern; and as to the other half, in trust for Foster. The judgment of the bank is not paid; more than half of it is still due. Is it possible that Baldwin and Foster and Poe contracted to hold for the use of Foster a judgment still due to the Bank of Pennsylvania? Could Baldwin agree that an unpaid judgment in favour of one of his creditors should be held for the use of another creditor? If Bald-

IV. — 45          2 E*

win's debt to the bank was paid by Foster, we can see how the bank judgment could be assigned to the person who paid them, or held in trust for him; but how the bank could be asked to assign it, or hold it in trust for some other person, until the debt to it is paid, is not so easily understood. But the last sentence of the agreement drawn by Foster puts this out of dispute: "If they (the Transporting Company) do not recover, the parties who make use of it or any part of it are to account with Wm. B. Foster in the settlement of their respective accounts." George Poe accepted it on these terms. If he intended to pay himself for his books with the M'Nair judgment, to leave the judgment of the Bank of Pennsylvania unpaid, and hold it as a security for $1200 more than remained due on the face of it, he intended something very different from what appeared by the writings. Such intention then or now is not fair to Foster; and the court were right in saying he was, on the writings, liable for the M'Nair judgment, deducting what Robison and Wilkins had paid to Foster.

But the deposition of Baldwin was taken, he being released by Poe. He states what was always his impression, until some extracts of notes which passed between him and Poe had been sent him, and that without seeing the whole correspondence, those extracts show there was some other agreement about this judgment being a security to Poe on the book transaction; and that this would appear from those extracts as to agreements on 5th of January and 23d of March. What those arrangements were he cannot recollect distinctly, nor the terms of them; but from those memorandums, he was induced to think he was mistaken in his impression that the book transaction was a separate matter, having no reference to this M'Nair's judgment. But from the extracts furnished him, he states that he agreed with Poe that the M'Nair judgment should stand as a security to Poe; it being expected the sale of the books would pay the Pennsylvania Bank judgment, it was to stand as a collateral security to the M'Nair judgment, for the payment of the books, and after that to hold according to the written agreement. Mr Baldwin repeated often in his deposition that he spoke with uncertainty; that his impression and recollection had been different on several matters before he was furnished with those extracts. The court received this parol evidence and left it to the jury, that if they believed the recollection of Mr Baldwin was correct, their verdict should be for the defendant, Mr Poe.

This direction was as favourable for defendant as he could wish; but the jury found for the plaintiff. This testimony seemed very inconsistent with the written papers, and did not accord with the recollection of both Robison and Wilkins, that they and Foster made the written agreement to meet the pressure of the bank demand. I will add that Baldwin stated positively that the agreement written by Poe on 4th of February 1823, did not express the meaning of the parties; that it ought to have stated expressly that

[Poe v. Foster.]

the debt to the bank was to be paid, and then the judgment by consent of Baldwin was to be held as stated in the writing. This however must be the construction of what Poe signed, or it has no meaning.

The defendant below pleaded *non assumpsit infra sex annos.* The court decided correctly that Foster could not sue until the suit by the Transporting Company was decided in his favour in 1834, and the suit was brought within six years after that. There was a bill of exceptions to testimony. Mr Baldwin in his deposition stated that his personal property had not been sold on the execution of the bank, but on that of another creditor whom he named; but stated nothing as to when it was sold, nor whether on a prior or subsequent execution. This was rejected: it was so immaterial, that it would not have been error whether admitted or rejected. It could not appear what effect it could have on the cause.

It was strenuously contended and admitted in the District Court, that if the parol evidence was admitted the verdict should be for the defendant below, and at first I did not disagree to this; but it seems to me this was a mistake. The transaction relating to the books was this: before the written agreement above stated, Baldwin had applied to Poe for a loan of money. Poe said he had no money, but he had an invoice of books given him by somebody to whom he had loaned money, and if Baldwin could raise money on them, he might have them — the invoice price $5000. After much inquiry and bargaining, he agreed to take them at $2500; and as the bank judgment was only $2000, he paid Poe the balance by assigning a judgment he had against a man in Mercer county. The books went to auction, and out of the proceeds of them was raised the $1000 paid on the bank judgment on 26th of March 1823. While this was going on, the agreement in writing with Foster, Robison and Wilkins, took place; and after that writing was executed, as is expressly stated by Baldwin, there was an agreement between him and Poe about 25th of March, by which it was agreed that Poe should hold the M'Nair judgment, to secure himself for the price at which he obliged Baldwin by letting him have the books. Now admit that such bargain and agreement was made, and that he had produced it in writing and under seal of Henry Baldwin, it would not make his case better. By the agreement of 22d of January, which Poe saw and accepted 4th of February, he knew this judgment was originally all in trust. By payments to Robison, by procuring him a credit in some account, and by payment to Wilkins, Foster agreed to take them for $1200, part of the judgment, and Baldwin became the absolute owner of that part, and with it we have nothing to do; but of the other half Baldwin was the trustee for Foster, and this perfectly known to Poe, by the paper to which he was a party. Now whatever a grasping creditor may obtain from a person he

[Poe v. Foster.]

knows to be a trustee, he himself becomes a trustee for. In point of fact, Baldwin and he were both trustees of Foster, and no attempt to put Foster's money in his own pocket, or keep it there, will succeed, if the facts are made known. The court might have said, that whether the jury were governed by the writings or the parol evidence, Foster was entitled to recover the $1200 and interest. For be it remarked, that it was assumed throughout that the judgment of the Bank of Pennsylvania was not only not kept alive for the use of Foster, but was not kept alive at all; and its lien was lost, and all real and personal estate in Allegheny county gone.

Judgment affirmed.